Lloyd Charles POWELL, Plaintiff-Appellant,

v.

W. T. STONE, Warden, Defendant-Appellee.

No. 72–1543.

United States Court of Appeals, Ninth Circuit.

Dec. 4, 1974.

---

18. See also note 12, *supra*.

19. The district court record shows that transcripts (3 volumes) of testimony taken on these dates were filed in the district court on 7/12/74: November 21, 1973, December 10, 1973, February 25, 1974, and March 6, 1974. Such transcripts appear to have been necessary for the determination of this appeal. However, Rule 39(e) provides that such costs "shall be taxed in the district court."

**94**

Robert W. Peterson (argued), Santa Clara, Cal., for plaintiff-appellant.

Thomas A. Brady, Deputy Atty. Gen. (argued), San Francisco, Cal., for defendant-appellee.

OPINION

Before MERRILL and BROWNING, Circuit Judges, and TAYLOR,* District Judge.

BROWNING, Circuit Judge:

Late one night appellant and three companions became involved in an alter-cation in the Bonanza Liquor Store in San Bernardino, California. Mary Parsons, wife of the manager, Gerald Parsons, was shot and killed. Ten hours later, appellant was arrested in Henderson, Nevada, for violation of a local vagrancy ordinance. Testimony regarding this arrest and the discovery of the murder weapon in appellant's jacket pocket in a search incident to the arrest, was introduced in appellant's subsequent trial for murder in the Superior Court of San Bernardino County. The California trial court rejected appellant's objection that the evidence should have been excluded because the Henderson vagrancy ordinance was unconstitutional and the arrest and search incident thereto were therefore illegal. Appellant was convicted of second-degree murder.

The conviction was affirmed by the California Court of Appeal. That court did not pass upon the constitutionality of the Henderson ordinance or the legality of the arrest and search; it affirmed on the ground that admission of the evidence, if error, was harmless under the test of Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The Supreme Court of California denied appellant's petition for habeas corpus.

Appellant then filed the present petition for habeas corpus in the federal district court. The district court denied the petition. The court did not reach the constitutionality of the Henderson vagrancy ordinance. It agreed with the California Court of Appeal that the admission of the evidence was harmless beyond a reasonable doubt. It also held that even if the Henderson ordinance were determined to be unconstitutional, the exclusionary rule should not be applied to bar admission of the fruits of the search incident to the otherwise valid arrest.

For reasons that will be set out later, we are unable to agree that admission of the evidence was harmless. We must therefore consider whether its admission was error. We conclude that it was.

* Honorable Fred M. Taylor, United States District Judge, District of Idaho, sitting by designation.

## I

We turn first to the constitutionality of the Henderson vagrancy ordinance. The ordinance reads:

Every person is a vagrant who:

Loiters or wanders upon the streets or from place to place without apparent reason or business and who refuses to identify himself and to account for his presence when asked by a police officer to do so if surrounding circumstances are such as to indicate to a reasonable man that the public safety demands such identification.

This ordinance, like the vagrancy ordinance held unconstitutional in Papachristou v. City of Jacksonville, 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110 (1972), "is void for vagueness, both in the sense that it 'fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute,' United States v. Harriss, 347 U.S. 612, 617 [74 S.Ct. 808, 98 L.Ed. 989] and because it encourages arbitrary and erratic arrests and convictions. Thornhill v. Alabama, 310 U.S. 88 [60 S.Ct. 736, 84 L.Ed. 1093]; Herndon v. Lowry, 301 U.S. 242 [57 S.Ct. 732, 81 L.Ed. 1066]."

The offense under the Henderson ordinance has three elements: (1) "loiter[ing] or wander[ing] upon the streets . . . without apparent reason or business," (2) "refus[ing] to identify himself and to account for his presence," and (3) "surrounding circumstances . . . such as to indicate to a reasonable man that the public safety demands such identification."

The language of the first element is the same in substance as the language of the Jacksonville ordinance held invalid in Papachristou: "[P]ersons wandering or strolling around from place to place

without any lawful purpose or object . . . shall be deemed vagrants." 405 U.S. at 156–157 n. 1, 92 S.Ct. 839 at 840.[1]

This language, the Supreme Court held, fails to give fair notice of the prohibited conduct to a possible offender, encompasses innocent activity that is part of the amenities of life in a free society, provides no guidelines by which enforcement authorities might distinguish between innocent and unlawful conduct, allows arrest and conviction on suspicion, places almost unfettered discretion in the hands of the police, and invites arbitrary and erratic application. If there is any material difference between the Jacksonville ordinance and the first element of the Henderson ordinance, the latter is more subject to these criticisms than the former.

The remaining two elements of the Henderson ordinance do not add significant specificity.

Assuming the phrase "to identify himself" is clear enough, one who properly identifies himself when asked would still violate the ordinance if he refused upon request "to account for his presence"—a phrase that reflects all of the deficiencies and is subject to all of the abuses that underlie the ruling in *Papachristou.* *See* Ricks v. District of Columbia, 134 U.S.App.D.C. 201, 414 F.2d 1097, 1104–1105 (1968); Baker v. Bindner, 274 F.Supp. 658, 664 (W.D.Ky.1967); United States v. Margeson, 259 F.Supp. 256, 268–269 (E.D.Pa.1966). The statutes involved in these three cases predicated criminality upon the offender's failure to give a "good" or "satisfactory" account of his presence. This condition is not explicitly stated in the Henderson ordinance, but it is clearly implied. Appellant offered an explanation of his conduct; he was arrested because the officer did not believe it.[2]

---

1. A similarly phrased Arizona statute was held plainly unconstitutional in Anderson v. Nemetz, 474 F.2d 814, 817 (9th Cir. 1973).

2. The arresting officer saw appellant and a companion walking across a parking lot in a shopping center. It was 10 o'clock Sunday

morning. The adjacent stores were open and there were cars on the lot. The arresting officer knew nothing of the shooting in California the night before. There is nothing to suggest that he connected appellant with any other specific crime. He testified that appellant and his companion "appeared" to look at

The third element of the offense under the Henderson ordinance—that "surrounding circumstances . . . indicate to a reasonable man that the public safety demands such identification"—cannot save the ordinance. Whether "public safety demands . . . identification" is far too amorphous a standard to provide either reasonable notice to the possible offender (who, indeed, may not be aware of the circumstances that implicate the public safety), or a sufficiently specific standard to guide the police. A similar, but less vague, limitation ("circumstances which justify suspicion that [a person] may be engaged or about to engage in crime") was found constitutionally inadequate in United States ex rel. Newsome v. Malcolm, 492 F.2d 1166, 1173 (2d Cir. 1974).

 From this analysis, it is clear that the Henderson vagrancy ordinance is incompatible with Fifth Amendment due process notice requirements incorporated in the Fourteenth Amendment. It should be emphasized that the ordinance is also incompatible with incorporated Fourth Amendment principles. A vagrancy ordinance of this kind "conflict[s] with the deeply rooted Fourth Amendment requirement that arrests must be predicated on probable cause." United States ex rel. Newsome v. Malcolm, *supra*, 492 F.2d at 1172. *See also* Papachristou, *supra*, 405 U.S. at 169–170, 92 S.Ct. 839; Hall v. United States, 148 U.S.App.D.C. 42, 459 F.2d 831 (1972) (*en banc*), *noted in* 47 N.Y.U.L.Rev. 595 (1972) *and* 18 Vill.L.Rev. 117 (1972).

As these authorities reflect, such a vagrancy ordinance subverts the "probable cause" requirement in two ways. It authorizes arrest and conviction for conduct that is no more than suspicious. A legislature could not reduce the standard for arrest from probable cause to suspicion; and it may not accomplish the same result indirectly by making suspicious conduct a substantive offense. Vagrancy statutes do just that, for they authorize arrest and conviction for the vagrancy offense if there are reasonable grounds to suspect that the accused may have committed, or if left at large will commit, a more serious offense. Police are duty-bound to investigate suspicious conduct, and founded suspicion will support an investigative stop and inquiry. Wade v. United States, 457 F.2d 335, 336 (9th Cir. 1972). But more is required to justify arrest. Henry v. United States, 361 U.S. 98, 101, 104, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959).[3]

The "probable cause" requirement is negated by such vagrancy ordinances in a second way. Their language is so general and vague, the elements of the offense so obscure, that they afford no reasonable criteria by which an officer may determine whether the ordinance has or has not been violated. Because a man of reasonable caution cannot form a reasonable belief as to whether such an ordinance has been violated, an officer

the police car, then "quickly" turned and walked in the opposite direction. They walked "in a rather rapid manner," occasionally looking back. When the police car turned and followed, the two men separated and walked in different directions. The officer followed appellant, and honked the patrol car horn. Appellant did not stop. The officer got out of his car and said, "Wait a minute." Appellant stopped. The officer asked if appellant had any identification. Appellant said he did not, that it had recently been stolen. The officer asked his name; appellant gave it. The officer asked appellant where he was staying. Appellant responded that he was staying with friends in Las Vegas (approximately eight miles north of Henderson), but he could not provide the name or address. The officer asked appellant where

he was going. Appellant said he was en route to Michigan; the officer testified that Henderson is south of Las Vegas and not east on the most direct road to Michigan. He arrested appellant because appellant "had no real answer as far as where he had been staying nor the friends that he was with nor could [he] give me a reason for being in the Henderson area. . . ." After the arrest the officer conducted the search complained of.

3. It is not contended that the search in this case could be justified as a protective search for weapons; prior to the search the arresting officer had no reason to believe appellant was "an armed and dangerous individual." Terry v. Ohio, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

cannot "gauge justification for [vagrancy] arrests consistly with Fourth Amendment principles." Hall v. United States, *supra*, 459 F.2d at 837.

## II

The question remains whether the evidence obtained in the search incident to appellant's arrest under the unconstitutional Henderson ordinance should have been excluded at his murder trial.

Appellee argues that the purpose of the exclusionary rule is to discourage objectionable police conduct, and this purpose would not be advanced by excluding the fruits of a search that appeared to be lawful when made. The crux of the contention is that the public interest is not served by deterring officers from enforcing a statute that is apparently valid. Appellant relies upon the principle underlying the holding in Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), that police officers cannot be held liable for damage for an arrest made in good faith and on probable cause under a statute they reasonably believe to be valid.[4]

Extension of Pierson v. Ray to allow admission of evidence obtained in the search incident to appellant's arrest for violation of an ordinance invalid under the Fourth Amendment would be inconsistent with a substantial line of Supreme Court authority. *See, e. g.*, Almeida-Sanchez v. United States, 413 U.S. 266, 93 S.Ct. 2533, 37 L.Ed.2d 596 (1973); Coolidge v. New Hampshire, 403 U.S. 443, 449–453, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); Sibron v. New York, 392 U.S. 40, 61–62, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968); Berger v. New York, 388

U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967).

In each of these cases except *Sibron* the exclusionary rule was applied to bar evidence obtained in good-faith reliance upon a statute later held to violate Fourth Amendment principles. In *Almeida-Sanchez*, marijuana found in a search of defendant's automobile without a warrant, probable cause, or consent was suppressed although a federal statute authorized government agents to conduct such searches for aliens within a reasonable distance of the border. In *Coolidge*, evidence obtained in an automobile search conducted by a police officer pursuant to a warrant issued by the Attorney General of the state was suppressed because the warrant was not issued by a "neutral and detached magistrate," as required by the Fourth Amendment, even though a state statute authorized the issuance of the warrant. In *Berger*, evidence obtained by electronic eavesdropping authorized in accordance with the state statute was excluded because the statutory procedures did not satisfy Fourth Amendment requirements that a warrant be issued only on showing that a specific crime has been or is being committed, and "particularly describing the place to be searched, and the persons or things to be seized." In *Sibron*, evidence obtained in a search assertedly conducted in accordance with a state "stop-and-frisk" statute was excluded on Fourth Amendment grounds with an express disclaimer by the Court of any need to inquire whether the state statute was valid or had been complied with.

The statutes involved in these cases dealt directly with the standards and

---

4. Appellee also contends that failure to apply the exclusionary rule should not afford a basis for collateral attack upon a state conviction in federal court. He submits the contention "for the record," recognizing that it is contrary to recent precedent. E. g., Whiteley v. Warden, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971); Mancusi v. DeForte, 392 U.S. 364, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968); Ramon v. Cupp, 423 F.2d 248 (9th Cir. 1970). The Supreme Court explicitly approved the doctrine in Kaufman v. United States, 394 U.S. 217,

225, 89 S.Ct. 1068, 22 L.Ed.2d 227 (1969), citing it as one basis for holding that failure to exclude evidence obtained in violation of the defendant's Fourth Amendment rights is a ground for collateral attack upon a *federal* conviction.

The issue was before the Court, but was not reached, in Schneckloth v. Bustamonte, 412 U.S. 218, 250, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) (Powell, J., concurring).

procedures governing searches. But as noted earlier, though in form the Henderson ordinance purports to create a substantive offense, in effect it negates the requirement of probable cause, basic to the Fourth Amendment.

The exclusionary rule was applied to bar evidence obtained in searches incident to good-faith arrests under invalid vagrancy statutes in both United States ex rel. Newsome v. Malcom, *supra*, 492 F.2d at 1174, and Hall v. United States, *supra*, 459 F.2d at 841. The reason suggested in *Newsome* is that the search-incident-to-arrest exception is justified. only because probable cause is required for the arrest, and, since this essential Fourth Amendment safeguard is lacking in arrests under a vagrancy ordinance, searches incident to such arrests are also unsupported by probable cause and are therefore invalid. This explains the invalidity of the search, but it does not offer a rationale for the exclusion of the evidence. Neither does the opinion in *Hall*. *Hall* found it unnecessary to decide whether the exclusionary rule should apply to the fruits of all searches incident to arrests under unconstitutional statutes. The Court concluded that at least, for the reasons suggested in Stovall v. Denno, 388 U.S. 293, 301, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), the exclusionary rule should be applied where the defendant was the first to successfully challenge a search on the new constitutional ground, as was the case in *Hall*. In view of *Papachristou, Newsome,* and *Hall,* however, it is far from clear that appellant could qualify as a constitutional innovator.

Two considerations clearly support the application of the exclusionary rule to this case. It may not be appropriate to fault an officer for making an arrest on mere suspicion, contrary to well-established Fourth Amendment principles, when such an arrest is authorized by a statute (*but see* Note, *supra,* 18 Vill.L.

Rev. at 121 n. 33),[5] but the same cannot be said with respect to those who enact such a statute authorizing such unconstitutional searches. The public interest may dictate that the police not be deterred from enforcing statutory law even when it mandates unconstitutional conduct, but the public interest is served by deterring legislators from enacting such statutes. *See* Note, *supra,* 47 N.Y.U.L. Rev. at 602, 604. In the second place, application of the exclusionary rule "serves another vital function—'the imperative of judicial integrity.' Elkins v. United States, 364 U.S. 206, 222 [80 S.Ct. 1437, 4 L.Ed.2d 1669] (1960). Courts which sit under our Constitution cannot and will not be made party to lawless invasions of the constitutional rights of citizens by permitting unhindered governmental use of the fruits of such invasions." Terry v. Ohio, *supra,* 392 U.S. at 12–13, 88 S.Ct. at 1875.

The holdings in United States v. Kilgen, 445 F.2d 287, 289 (5th Cir. 1971), and United States v. Dameron, 460 F.2d 294 (5th Cir. 1972), are not to the contrary. Both involved consent searches rather than searches incident to arrest. They hold only that invalidation of the underlying substantive statute does not vitiate the consent to search.

### III

Finally, we state the basis for our conclusion that admission of the evidence obtained in the unlawful search was not harmless beyond a reasonable doubt.

Shortly after appellant and his three companions entered the liquor store, Mr. and Mrs. Parsons saw appellant conceal a bottle of wine under his coat. They demanded payment. Appellant denied having the wine. Mrs. Parsons gave her husband a gun, which Mr. Parsons pointed at appellant. A struggle ensued involving appellant, Mr. Parsons and Mrs. Parsons. Three shots were fired: the first, admittedly fired by Mr. Parsons,

---

**5.** The fact that the officer acted in good faith does not validate the search or dictate admission of the evidence seized. Beck v. Ohio, 379 U.S. 89, 97, 85 S.Ct. 223, 13 L.Ed.2d 142

(1964); Henry v. United States, 361 U.S. 98, 102, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959). *See also* Whiteley v. Warden, 401 U.S. 560, 568, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971).

went into the ceiling; the second and third wounded Mr. and Mrs. Parsons, Mrs. Parsons fatally. Mr. Parsons testified that after the first shot was fired appellant obtained control of the gun and Mr. Parsons ran to get another, leaving appellant and one of his companions, Fred Buckley, with Mrs. Parsons. Mr. Buckley first testified that appellant and Mr. Parsons were "wrestling with the gun" and that he "can't rightly say who had the gun" when the fatal shot was fired; he later testified that he "believed" appellant had the gun.

The defense submitted to the jury all of the theories suggested by the facts, including self-defense, justifiable homicide, accident, and that the fatal shot was not fired by appellant.

In rebuttal the prosecutor made effective use of the testimony regarding the Nevada arrest and search. He refuted the theory of accident by demonstrating to the jury the time and effort required to pull the trigger and discharge the murder weapon, and by inviting the jury to try it themselves, commenting, "It doesn't fire accidentally and it doesn't hit people accidentally either." The prosecutor used appellant's possession of the gun in responding to the defense argument that in order to find that appellant shot the victim the jury would have to rely entirely on the testimony of Mr. Buckley, an accomplice whose credibility had been severely attacked. The prosecutor noted Mr. Parsons' testimony that when he returned to the room and found his wife shot, Mr. Buckley alone was present; and, as the prosecutor pointed out, Mr. Buckley did not have the gun. The murder weapon, the prosecutor emphasized, was found "in the possession of this defendant in Henderson, Nevada." Thus, the fact that appellant

had possession of the gun the next morning may have been crucial, for it virtually eliminated the possibility that Mr. Buckley or another of appellant's companions could have picked up the gun during the scuffle and shot Mrs. Parsons. Appellant's possession of the gun also supported the inference that he was not merely struggling with Mrs. Parsons for possession of the gun when she was shot but had the gun in his control. Finally, the prosecutor pointed out that when the gun was found on appellant's person, all six shells had been expended, and since only three shots were fired from this gun in the store, the inevitable inference was that appellant had fired the three remaining shots after his flight from the liquor store and before his arrest. The effect of the testimony of appellant's arrest for vagrancy in another state while in possession of the murder weapon with three bullets missing was to picture appellant as an evil and violent man.[6]

Both the California Court of Appeal and the court below concluded that in light of other evidence in the record, the testimony regarding appellant's possession of the murder weapon in Nevada "was not required to establish any element of the crime charged." That is not the test. The question is whether it is "[ ]possible for us to say that the State has demonstrated, beyond a reasonable doubt, that the [admission of the unlawfully seized evidence] did not contribute to [appellant's] conviction[ ]." Chapman v. California, *supra*, 386 U.S. at 26, 87 S.Ct. at 829. In good conscience, we are unable to do so.

The judgment is reversed and the cause remanded to the district court for further proceedings consistent with this opinion.

---

6. The prosecutor also argued to the jury that appellant's presence in Nevada soon after the offense was evidence of flight reflecting consciousness of guilt. But as the state court and the court below point out, the arresting officer's knowledge of appellant's presence in Nevada was not the product of either the arrest or the search.