**GOVERNMENT OF the CANAL ZONE, Plaintiff-Appellee,**

v.

**Jose CASTILLO L. (Lopez), Defendant-Appellant.**

**No. 76–4423.**

United States Court of Appeals, Fifth Circuit.

Feb. 24, 1978.

Jack B. Hood (Court-appointed), Balboa, Canal Zone, for defendant-appellant.

Frank J. Violanti, U. S. Atty., John B. McCormick, Asst. U. S. Atty., Balboa, Canal Zone, for plaintiff-appellee.

Before BROWN, Chief Judge, RONEY and FAY, Circuit Judges.

BROWN, Chief Judge:

In this appeal, defendant Jose Castillo asks us to hold that his conviction for vagrancy cannot withstand an attack on the constitutionality of the underlying statute. Castillo was convicted in October of 1976 before a Magistrate in the Panama Canal Zone for violating one section of the Canal Zone Code's vagrancy statute and for tampering with a motor vehicle, and given concurrent sentences of thirty days. After a trial de novo held without a jury, the judge for the District of the Canal Zone rejected Castillo's constitutional challenge to the vagrancy law, found him guilty of both charges, and approved the concurrent sentences previously imposed.[1] We find no

---

1. Castillo's offenses both fall within the "exclusive original jurisdiction" of the Magistrates' Courts as defined in 3 Canal Zone Code § 171(2): "Criminal actions wherein the punishment which may be imposed does not ex- ceed a fine of $100, or imprisonment in jail for 30 days, or both." Under 6 Canal Zone Code § 3921, a defendant can appeal from the Magistrate's Court to the District Court, and, under § 3924, receive a trial de novo. The Canal

constitutional infirmity in the vagrancy statute and therefore affirm the District Court.

Castillo was arrested on October 7, 1976, in a residential neighborhood in the Canal Zone. At the trial, one witness testified that at approximately six o'clock in the morning, she saw Castillo attempting to gain access to a truck in a garage adjacent to a private home, and a second witness testified that Castillo attempted to open the doors to a second house and to a vehicle parked in the street. Castillo was convicted for tampering with a motor vehicle under 6 Canal Zone Code § 1565(a)(3) but does not appeal from this verdict or sentence. This appeal is from the concurrent sentence imposed for Castillo's conviction as a vagrant under 6 Canal Zone Code § 2541(1). The sole basis for reversal urged here is that the vagrancy statute is unconstitutionally vague and therefore void under the Fifth Amendment due process requirements.

■ Before considering this claim, we must resolve two aspects of this case that may moot the appeal. The first question is whether the fact that Castillo has long since completed his thirty-day jail sentence moots his appeal from the vagrancy conviction. In *St. Pierre v. United States*, 1943, 319 U.S. 41, 63 S.Ct. 910, 87 L.Ed. 1199, the Supreme Court held that completion of a six months' sentence prior to argument on the merits of the appeal rendered the appeal moot "because, after petitioner's service of his sentence and its expiration, there was no longer a subject matter on which the judgment of this Court could operate." The Supreme Court has since substantially rewritten this variant of the mootness doctrine, stating in *Sibron v. New York*, 1968, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917,

that "*St. Pierre* . . . must be read in [the] light of later cases to mean that a criminal case is moot only if it is shown that there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged conviction." *Id.*, 392 U.S. at 57, 88 S.Ct. at 1900, 20 L.Ed.2d at 931–32.[2]

We find that there is sufficient possibility that Castillo could suffer collateral consequences from his vagrancy conviction to justify our reaching the merits of this appeal despite the defendant's satisfaction of his sentence. Castillo's conviction under some circumstances "presumably could be used for impeachment and sentencing purposes in any future criminal proceeding," *United States v. Camil*, 5 Cir., 1974, 497 F.2d 225, 227, *quoting United States v. Schrimsher*, 5 Cir., 1974, 493 F.2d 842, 844. Admittedly, such impeachment could not occur in the federal courts, where F.R.Evid. 609 permits impeachment by prior conviction only if the conviction is for an offense punishable by at least one years' imprisonment, or in courts governed by the Panama Canal Zone Code, which allows impeachment by prior conviction only if the underlying offense is a felony. 5 Canal Zone Code § 2825. However, Castillo would be vulnerable to enhanced punishment for any subsequent convictions under habitual offender statutes, such as 6 Canal Zone Code §§ 111–113. Furthermore, as the Supreme Court has stated, it is not necessary to make a detailed inquiry "into the actual existence of specific collateral consequences"; the possibility that adverse legal consequences will result from the criminal conviction is, in effect, "presumed" as an "obvious fact of life." *Sibron, supra*, 392

Zone Magistrate is an appointee of the President or his designee, 3 Canal Zone Code § 82, and is not a United States Magistrate under 28 U.S.C. § 631.

2. It also appears that because Castillo "could not have brought his case to this Court for review before the expiration of the sentence," *Sibron, supra*, 392 U.S. at 52 n.13, 88 S.Ct. at 1897–98 n.13, 20 L.Ed.2d at 929 n.13, a second exception to the mootness rule might also apply. Castillo's sentence was for only thirty

days' duration, and twenty-six days of that sentence had expired by the time the District Court heard the case de novo on appeal from the Magistrate's Court (R. at 12). However, this exception appears to require a showing that no steps existed by which the defendant could have preserved his case pending appeal. Neither party addressed this question and we do not hold that this exception to the mootness rule applies.

U.S. at 55, 88 S.Ct. at 1899, 20 L.Ed.2d at 930. Castillo has a " 'substantial stake in . . . the conviction' " which survives the expiration of the sentences. *Id.,* 392 U.S. at 59, 88 S.Ct. at 1900, 20 L.Ed.2d at 932.[3]

■ The second basis on which this case may be vulnerable to dismissal arises from the fact that Castillo was convicted under two counts and given concurrent sentences, but appeals from only one of the convictions. Even if we were to hold that the vagrancy conviction must be reversed, the defendant's term of imprisonment would be unaffected. Under the concurrent sentence doctrine, this Court has the discretion not to reach the defendant's challenge to the vagrancy conviction by reason of a valid (here, unchallenged) conviction and concurrent sentence on a separate count. *See, e. g., United States v. Bynum,* 5 Cir., 1978, 566 F.2d 914, 922–23. The Supreme Court has characterized the doctrine as primarily a rule of "judicial convenience," *Benton v. Maryland,* 1969, 395 U.S. 784, 791, 89 S.Ct. 2056, 23 L.Ed.2d 707, 714, rather than a jurisdictional bar to consideration of challenges to multiple convictions for which concurrent sentences have been imposed. The concurrent sentence doctrine is most frequently invoked in appeals that attack all the counts on which a defendant was convicted. In such cases, the reviewing court will uphold one of the counts as valid and decline to examine the remaining challenges. *E. g., United States v. Works,* 5 Cir., 1976, 526 F.2d 940, 948. We need not decide whether the concurrent sentence doctrine applies to the peculiar situation of this case, where the defendant attacks only one of the two counts underlying his conviction. We exercise our discretion to pass on the merits.

The section of the Panama Canal Zone vagrancy statute challenged here, 6 Canal Zone Code § 2541(1), provides that:

Whoever:

(1) is found within or loitering about a building or structure, or a vessel, railroad car, or storage yard, without authority or permission so to be or to do so; . . . is a vagrant, and shall be fined not more than $100 or imprisoned in jail not more than 30 days, or both.

The constitutionality of this provision must be tested under the standard enunciated in *Papachristou v. City of Jacksonville,* 1972, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110, where the Supreme Court held that the vagrancy-loitering ordinance before them was:

void for vagueness, both in the sense that it "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute," *United States v. Harriss,* 347 U.S. 612, 617, 74 S.Ct. 808, 98 L.Ed. 989, and because it encourages arbitrary and erratic arrests and convictions. *Thornhill v. Alabama,* 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093; *Herndon v. Lowry,* 301 U.S. 242, 57 S.Ct. 732, 81 L.Ed. 1066.

405 U.S. at 162, 92 S.Ct. at 843, 31 L.Ed.2d at 115. The Supreme Court also found that vagrancy ordinances, which are directed at suspected or future criminality rather than observable conduct, may be inconsistent with the Fourth Amendment requirement that arrests be predicated on probable cause. *Papachristou, supra,* 405 U.S. at 169–70, 92 S.Ct. at 846–47, 31 L.Ed.2d at 119; *Hall v. United States,* 1972, 148 U.S. App.D.C. 42, 459 F.2d 831, 836 (en banc). Such ordinances, when phrased in vague and general terms, authorize "arrest and conviction for conduct that is no more than suspicious," and "afford no reasonable criteria by which an officer may determine whether the ordinance has or has not been violated." *Powell v. Stone,* 9 Cir., 1974, 507 F.2d 93, 96, *rev'd on other grounds,* 1976, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067.

■ We emphasize at the outset that the provision at issue here bears little resemblance to the ordinance declared unconstitu-

---

**3.** The fact that Castillo was simultaneously convicted for a separate offense is irrelevant to the requisite possibility of consequences collat-eral to the sentence for vagrancy. See *Sibron, supra,* 393 U.S. at 55, 88 S.Ct. at 1889, 20 L.Ed.2d at 930.

tional in *Papachristou*, which " 'Derived from early English Law' " and therefore employed " 'archaic language' " in defining vagrancy. 405 U.S. at 161, 92 S.Ct. 839. The resulting ordinance was a potpourri of harmful and harmless, licit and illicit, activities, manners, mores, and conditions.[4] By contrast, the Panama Canal Zone Code section before us appears relatively restrained and concise. However, since *Papchristou* was decided, other vagrancy and loitering ordinances that also appeared relatively specific and clear have consistently failed to pass constitutional muster. *United States ex rel. Newsome v. Malcolm*, 2 Cir., 1974, 492 F.2d 1166, 1171–74, *aff'd on other grounds sub nom, Lefkowitz v. Newsome*, 1975, 420 U.S. 283, 95 S.Ct. 886, 43 L.Ed.2d 196; *Powell v. Stone*, 9 Cir., 1974, 507 F.2d 93, 95–97, *rev'd on other grounds*, 1976, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067. The question is whether the provision before us is distinguishable not only from the ordinance held invalid in *Papachristou*, but also from the more refined laws that have since been held to be defective. We answer this question in favor of the constitutionality of this statute.

The Panama Canal Zone statute has twenty-seven sections in all, many of which are identical to the language held unconstitutional in *Papachristou*.[5] Because Castillo

---

**4.** The Jacksonville ordinance challenged in *Papachristou* provided that:

> "Rogues and vagabonds, or dissolute persons who go about begging common gamblers, persons who use juggling or unlawful games or plays, common drunkards, common night walkers, thieves, pilferers or pickpockets, traders in stolen property, lewd, wanton and lascivious persons, keepers of gambling places, common railers and brawlers, persons wandering or strolling around from place to place without any lawful purpose or object, habitual loafers, disorderly persons, persons neglecting all lawful business and habitually spending their time by frequenting houses of ill fame, gaming houses, or places where alcoholic beverages are sold or served, persons able to work but habitually living upon the earnings of their wives or minor children shall be deemed vagrants."

405 U.S. at 156–57, 92 S.Ct. at 840.

**5.** Sections 2–26 of the Panama Canal Zone vagrancy statute read:

§ 2541. *Miscellaneous acts constituting vagrancy*

Whoever:

\*     \*     \*     \*     \*     \*

(2) peddles goods or merchandise about a laborers' camp or mess house during hours when laborers are ordinarily employed at work, or in or about places where groups of men are at work;

(3) is found in a public place in such a state of intoxication as to disturb others, or as to be unable, by reason of his condition, to care for his own safety or the safety of others;

(4) roams about from place to place without any lawful business, and without being able to give a satisfactory account of himself;

(5) loiters, prowls or wanders upon the property of another, in the nighttime, without visible or lawful business with the owner or occupant thereof;

(6) while loitering, prowling or wandering upon the property of another in the manner and circumstances described by paragraph (4) of this section, peeks in the door or window of a building or structure located thereon which is inhabited by human beings, without visible or lawful business with the owner or occupant thereof;

(7) being able by lawful means, to support himself or his spouse or his or her children, willfully refuses or neglects to do so;

(8) being a common prostitute, wanders in the public streets or highways, or in a place of public resort and behaves in a riotous and indecent manner;

(9) being in a street, highway or public place, accosts a stranger and offers to take him to the house or residence of a prostitute;

(10) being a common prostitute or nightwalker, loiters in a street or highway and importunes passengers for the purpose of prostitution;

(11) wanders abroad or places himself in a public place, street, wharf, highway, court or passage in order to beg or gather alms or to cause, procure or encourage a child to so do;

(12) being in a street, highway or public place, accosts a stranger or follows him about, without lawful authority or excuse;

(13) pretends or professes to tell fortunes by palmistry, "obeah" or any such like superstitious means, or uses or pretends to use any subtle craft or device, in order to deceive and impose upon other persons;

(14) lives in or loiters about houses of ill fame;

(15) wanders about the streets at late or unusual hours of night, without any visible or lawful business, and without being able to give a satisfactory account of himself;

(16) loiters in or about public toilets in public places;

(17) annoys or molests a child under the age of 18 years;

was charged and convicted only under the first section of the statute, we do not here rule on the validity of the remaining twenty-six provisions. We mention these provisions to emphasize the structure of this statute, which classifies a variety of crimes as vagrancy but then describes in more or less specific terms the conduct that is to be punished. See, for example, section 20, which prohibits indecent exposure; section 25, which proscribes carrying certain kinds of weapons; section 24, which forbids the possession of burglary's tools; and section 27, which proscribes disorderly conduct. This structure also distinguishes the statute from the undifferentiated proscriptions involved in *Papachristou.*

The offense under section one of the Panama Canal Zone vagrancy statute has two elements: (i) that the defendant is "found within" or is "loitering" about a building, structure, vessel, railroad car, or storage yard, and (ii) that he have no authority or permission to be in such locations. Under the first part of the *Papachristou* vagueness test, we must determine whether these prohibitions are stated with sufficient precision to give a reasonably intelligent person notice of the conduct that is forbidden. See *Lanzetta v. New Jersey,* 1939, 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888.

The language of the first element is readily distinguishable from that of the ordinances held invalid in *Papachristou, Powell v. Stone,* and *Newsome v. Malcolm.* In these cases, the offending ordinances provided that "persons wandering or strolling around from place to place without any lawful purpose or object . . . shall be deemed vagrants," *Papachristou, supra,* 405 U.S. at 156–57 n.1, 92 S.Ct. at 840 n.1, 31 L.Ed.2d at 112 n.1; *Powell v. Stone, supra,* 507 F.2d at 95, or that "[a] person is guilty of loitering when he: . . . Loiters, remains or wanders in or about a place without apparent reason . . . ." *Newsome v. Malcolm, supra,* 492 F.2d at 1171. Such language prohibits undefined activities—loitering, remaining, wandering, strolling—in unspecified places for unspecified periods of time, and focuses on whether there *appears* to be a lawful reason for such activities. As the Second Circuit stated in *Newsome,* due process does not permit of a prohibition so vague that:

> a citizen who sought to conform his conduct to this provision would be unable to discern whether he risked criminal responsibility by taking a leisurely stroll, by sitting briefly on a park bench, or by seeking shelter from the elements in the doorway of a building.

492 F.2d at 1172–73.

In contrast to these vague and uninformative proscriptions, the Panama Canal Zone statute describes with relative specificity the places where an individual runs

(18) loiters about a school or public place at or near which school children attend;

(19) willfully exposes to view in a street, road, highway or public place, or in the window or other part of a shop or other building situated in a street, road, highway or public place, an obscene print, picture or other indecent exhibition;

(20) willfully, openly and obscenely exposes his person in a public street, road, highway or place of public resort, or in view thereof;

(21) wanders abroad and endeavors by the exposure of wounds and deformities to obtain or gather alms;

(22) endeavors to procure charitable contributions under any false or fraudulent pretenses;

(23) being known to be a pickpocket, thief, burglar, or confidence operator, either by his own confession or by his having been convicted as such, and having no visible or other lawful means of support, loiters around a steamboat landing, railroad depot, banking institution, broker's office, place of amusement, auction room, store, shop, or crowded thoroughfare, car, or omnibus, or a public gathering or assembly;

(24) has in his custody a picklock, key, crow, jack, bit or other implement with intent to break into a dwelling house, warehouse, store, shop, coachhouse, stable, garage, outbuilding, vehicle, motorboat, launch, or aircraft;

(25) is unlawfully armed with a gun, pistol, cutlass, bludgeon or other offensive weapon;

(26) has upon him an instrument with intent to commit a felonious act; or

(27) engages in any kind of disorderly conduct or breach of the peace, or in any act or conduct inciting to violence or tending to provoke or incite another to breach of the peace— is a vagrant, and shall be fined not more than $100 or imprisoned in jail not more than 30 days, or both.

the risk of criminality. The terms "found within" and "loitering" are still troublesome in their vagueness and potentially broad, unpredictable application. However, we find that the second element of the offense under the statute adds sufficient specificity to satisfy the Constitution.

Under the second element of the vagrancy offense established by this statute, the mere presence of an individual in a "building or structure, . . . vessel, railroad car, or storage yard" will not make him vulnerable to a vagrancy charge unless he has no "authority or permission" to be there. This language is free from the defects that appellate courts have found in clauses similarly designed to narrow the scope of vagrancy and loitering ordinances. In *Newsome v. Malcolm,* the second element of the loitering offense was established by "circumstances which justify suspicion that [a person] may be engaged in or about to engage in crime," 492 F.2d at 1173; in *Powell v. Stone,* the ordinance further defined a vagrant as a person who, while loitering or wandering, "refuses to identify himself and to account for his presence when asked by a police officer to do so if surrounding circumstances are such as to indicate to a reasonable man that the public safety demands such identification," 507 F.2d at 95. The reviewing courts held that "[w]hether 'public safety demands . . . identification' is far too amorphous a standard to provide either reasonable notice to the possible offender . . . or a sufficiently specific standard to guide the police." *Powell v. Stone, supra,* 507 F.2d at 96. This conclusion is based on the likelihood that " 'circumstances' " indicative of

incipient criminal activity or harm to the public safety "may reflect the 'whim of the policeman,' . . . rather than the conduct of an individual . . . creating the 'hazard of being prosecuted for knowing but guiltless behavior'," *Newsome v. Malcolm, supra,* 492 F.2d at 1173 [citations omitted]. Ordinances that predicate vagrancy on "suspicious circumstances" or the failure of an individual to "give an account of himself" are unconstitutionally vague because they "furnish no standard by which it can be ascertained whether an explanation for particular conduct is 'good' . . ." and therefore invest enormous discretion in those charged with enforcement. *Ricks v. District of Columbia,* 1968, 134 U.S.App. D.C. 201, 414 F.2d 1097, at 1104. We do not find such dangers in the statute before us.

An individual found in one of the enumerated places is vulnerable to arrest and conviction for vagrancy only if the circumstances show that no authorization or permission to be there was given by one who is capable of furnishing such consent.[6] The statute thus furnishes a single standard for criminality that is capable of objective ascertainment in each case. A reasonably intelligent person would, we believe, know that this statute forbids what are essentially acts of trespass: the presence in places to which access is obviously not open to all without permission or consent from those authorized to give it.[7] We decline to hold the law unconstitutional because Congress has chosen to label such conduct as a form of vagrancy rather than adopting a different formal classification.[8]

When viewed as a variation on a trespass statute, this law does pass constitutional

---

6. Because this appeal resolves only the facial constitutionality of the statute, we do not address such questions as the sufficiency or burden of proof.

7. The defendant's conduct not only comes within the terms of the statute when understood as a prohibition against trespass, but also illustrates the clarity of these terms and the warning they provide. A reasonably intelligent person would understand that the premises of a private dwelling and the adjacent buildings, such as a garage containing a locked automobile, are buildings or structures within the

meaning of the statute. And it is clearly reasonable to expect a person to know that no one has a right to be on the premises of a dwelling place without securing the permission of the occupant.

Used in this context, "loitering" is not a constitutionally bad word. It merely forbids the presence, whether standing still, shuffling, or sitting, on the premises of a dwelling, unless permission has been obtained.

8. See text and note at note 5, *infra,* for a description of the statute's classification scheme.

muster. The words "authority or permission" in the context of a trespass prohibition can have only one meaning: right, permission, or license recognized by law as permitting an entry into the areas described in the statute. See *Hurley v. Hinckley,* D.Mass., 1969, 304 F.Supp. 704, *aff'd sub. nom., Doyle v. O'Brien,* 1970, 396 U.S. 277, 90 S.Ct. 603, 24 L.Ed.2d 469. We hold that this language affords both potential offenders and those charged with the statute's enforcement sufficient information as to the conduct that is prohibited to satisfy the Fifth Amendment due process notice requirements and to avoid conflict with the Fourth Amendment principles of probable cause. While any law that rests criminal liability on such terms as "vagrancy" or "loitering" will continue to raise constitutional suspicions, this statute satisfies the principles underlying the *Papachristou* tests:

> The root of the vagueness doctrine is a rough idea of fairness. It is not a principle designed to convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited.

*Colten v. Kentucky,* 1972, 407 U.S. 104, 110, 92 S.Ct. 1953, 1957, 32 L.Ed.2d 584, 590.

AFFIRMED.