FRIEDMAN, J.
Code section 647 is the new disorderly conduct law, enacted in 1961, to replace the obsolete and partially unconstitutional vagrancy law (see In re Newbern, 53 Cal.2d 786 [3 Cal.Rptr. 364, 350 P.2d 116]). It provides in part: “Every person who commits any of the following acts shall be guilty of disorderly conduct, a misdemeanor: .... (e) Who loiters or wanders upon the streets or from place to place without apparent reason or business and who refuses to identify himself and to account for his presence when requested by any peace officer so to do, if the surrounding circumstances are such as to indicate to a reasonable man that the public safety demands such identification. 1 ’
Defendant was convicted of violating the quoted provision and appeals. Primarily he contends that the evidence is insufficient to support his conviction. He also argues inadequacy of the complaint. The latter contention, made for the first time on appeal, comes too late. (Penal Code, § 1003; People v. Barry, 153 Cal.App.2d 193 [314 P.2d 531].) While *858 asserting statutory vagueness, he expressly foregoes any constitutional attack on the statute.
A settled statement has been filed, outlining the following facts: Defendant was arrested in an unincorporated residential area at approximately 8 :50 p. m. on February 10, 1962. Earlier in the evening a Mr. Bill Little had pursued a man down one of the neighborhood streets. The man wore a dark jacket. Another resident of the neighborhood, Mrs. Fanger, saw a stranger in her garage. He wore a dark jacket and dark trousers with tapered legs. Mrs. Fanger telephoned the sheriff’s office, reporting a prowler. Deputy Sheriff Kohlmeyer responded to the call and checked the neighborhood. Five blocks distant from the Fanger residence he saw defendant walking. Defendant told the officer that he had been visiting a friend named Mike; that he did not lmow where Mike lived and could give no address; that he was going to work at a café in North Sacramento where he was employed as a dish washer. Defendant produced a social security card. He admitted that he was a parolee. Mrs. Fanger could not identify him as the man she had seen in her garage. Two aspects of the facts seem particularly noteworthy to us. First, at the time of stopping defendant the officer had no information as to the appearance of the person seen in Mrs. Fanger’s garage. Secondly, the officer had no awareness of the incident described by Mr. Little.
Defendant’s brother-in-law, W. M. Thomason, lives in the same general area. Mr. Thomason testified that the defendant. had been his dinner guest and had started to walk to work at the Emerald Café; that Middlebury Road, where defendant was apprehended, was on the best route to the café; that he Thomason, had offered to drive defendant to the café, but the latter had decided to walk; that defendant cannot read. Defendant’s sister, Mrs. Thomason, gave somewhat similar testimony. She stated that defendant was wearing a dark gray tweed sport coat and dark blue “levi’s” with tapered legs. Defendant testified that he had had dinner with his sister and her family; that he decided to walk to his employment from his sister’s home as he had on previous occasions; that he had not “prowled.” He described his proposed route from the Thomason home to the Emerald Café, which route included the street on which Officer Kohlmeyer had stopped him. He also testified that he had a friend named Mike in North Sacramento ; that he did not know Mike’s address or last name.
The night manager of the Emerald Café testified that *859 defendant had been employed there for six months; that he was steady and faithful; that defendant’s shift started at 10 p. m., but he usually appeared before 9 o’clock. Defendant was due at work on the night of his arrest.
To produce a conviction under Penal Code section 647, subdivision (e) the prosecution must prove: (a) that the accused was loitering or wandering without apparent reason or business; (b) that, although requested by an officer, he refused to identify himself and account for his presence, and (c) that public safety considerations reasonably indicated a necessity for the defendant’s identification.
Antiloitering statutes have been the source of much legislative and judicial difficulty (see In re Cregler, 56 Cal.2d 308 [14 Cal.Rptr. 289, 363 P.2d 305] ; Phillips v. Municipal Court, 24 Cal.App.2d 453 [75 P.2d 548] ; cf. Thompson v. City of Louisville, 362 U.S. 199 [80 S.Ct. 624, 4 L.Ed.2d 654, 80 A.L.R.2d 1355]). They represent an arena for conflict between healthy antipathy to the “roust” or arrest on suspicion, on the one hand, and legitimate interests in crime prevention, on the other. Security against arbitrary police intrusion is basic to a free society (Wolf v. Colorado, 338 U.S. 25, 27 [69 S.Ct. 1359, 93 L.Ed. 1782]). Thus, arrests on mere suspicion offend our constitutional notions. Frequently they amount to arrest for status or condition instead of unlawful conduct. Most of the provisions of the now-repealed vagrancy statute (former Pen. Code, § 647) were concerned with status rather than conduct.
At the opposite side of the scale is the view that law enforcement officers need not wring their hands in constitutional frustration while nighttime prowlers and potential thieves and rapists skulk through our neighborhoods. The usual accommodation between these warring notions is the concept of “reasonable cause,” that is, an officer may properly inquire, search and sometimes arrest if he has reasonable cause to believe that a crime has been committed (People v. Simon, 45 Cal.2d 645 [290 P.2d 531]; People v. West, 144 Cal.App.2d 214 [300 P.2d 729]).
Section 647, subdivision (e) is itself the product of such a reconciliation. In its original form it was drafted by Professor Arthur Sherry of the University of California School of Law. (See, Sherry, Vagrants, Rogues and Vagabonds—Old Concepts in Need of Revision, 48 Cal.L.Rev. 557 (Oct. 1960).) As published by Professor Sherry, the draft read as follows: “Who loiters or wanders upon the streets or from place to *860 place without apparent reason or business and who refuses to identify himself and to account for his presence when requested by any peace officer so to do.” The “reasonable man” clause which appears in the present statute was added to the Sherry draft by the Assembly Interim Committee on Criminal Procedure. (Assembly Interim Committee Reports, 1959-61, Vol. 22, No. 1, pages 14-18.) It was literally extracted from a dictum in Gisske v. Sanders, 9 Cal.App. 13, 16 [98 P. 43], which had been confirmed by the State Supreme Court in People v. Simon, 45 Cal.2d 645 [290 P.2d 531] : “A police officer has a right to make inquiry in a proper manner of anyone upon the public streets at a late hour as to his identity and the occasion of his presence, if the surroundings are such as to indicate to a reasonable man that the public safety demands such identification.”
The Assembly committee’s draft was embodied in a bill which was subsequently enacted as Penal Code section 647. In effect, the statute as now drawn attempts to extend the power of inquiry and arrest to peace officers when demanded by reasonable considerations of public safety, while preventing the abuses inherent in arbitrary or dictatorial police interference. A statute which embodies these complex notions is difficult to draft and difficult to apply.
We consider whether the conduct of the defendant Bruno falls within the loitering or wandering clause of the statute. When accosted by the officer, Bruno was walking along a residential street in the early night hours. His counsel contends that Bruno was neither loitering nor wandering, but was walking to work, or, in statutory terms, that he had apparent reason for being on the street. The contention assumes acceptance of the defense testimony. Bruno’s conviction by the trial court necessarily implies rejection of that testimony. We must assume in favor of the conviction the existence of every fact which the trial court could have reasonably deduced from the evidence. (People v. Newland, 15 Cal.2d 678, 681 [104 P.2d 778].) The test on appeal is whether there is substantial evidence to support the conclusion of the trier of fact. (People v. Daugherty, 40 Cal.2d 876, 885 [256 P.2d 911].)
In daily parlance “wandering” has a fairly innocent connotation. Here it appears in a criminal statute and is endowed with a somewhat more unpleasant color, indicative of one whose movements are coupled with criminal aims. It has been held that “loitering” as used in a criminal statute *861 has a sinister connotation, which includes waiting, but excludes the notion of waiting for a lawful purpose. (In re Cregler, supra, 56 Cal.2d 308, 312.) Similarly here, if prohibited loitering consists of waiting for evil purposes, so prohibited wandering consists of movement for evil purposes. Three aspects of the testimony seem noteworthy at this point: First, defendant does not deny having told the officer he had been visiting “Mike,” although he now testifies, consistently with his sister and brother-in-law, that he had been at the latters ’ home for dinner. Second, defendant has never identified Mike or supplied Mike’s address, other than by designating the general area of North Sacramento. Third, the location at which Deputy Kohlmeyer stopped defendant is on a possible, fairly direct route to defendant’s place of employment. His proposed route, as actually described by him, is quite circuitous.
In view of the inconsistencies and contradictions which characterize defendant’s statements to the officer and his testimony in court, there was substantial evidence to sustain the trial court’s finding that his presence in the neighborhood constituted conduct within the meaning of the first clause of the statute.
Next we inquire whether there is substantial evidence of noncompliance with the second part of the statute, the requirement of identification and explanation. The defendant did show the officer his Social Security card. He did not, however, account for his presence other than to say that he had been visiting a friend whose last name and whereabouts he did not know. Such an obviously false account is no account at all. There is no basis for disturbing the implied finding of defendant’s failure to account to the officer for his presence.
Lastly, we reach the third element of the statute, that is, whether the trial court was justified in finding that “the surrounding circumstances [were] such as to indicate to a reasonable man that the public safety demands such identification. ’ ’
In gauging the propriety of the officer’s inquiry, the trier of fact cannot catalog “surrounding circumstances” in the abstract. For statutory purposes, the surrounding circumstances are a relative quantity. They must be measured in relationship to time and state of mind. They must exist as of the time of arrest and cannot be assembled later as artificial justification for an arrest which was causeless when made. Further, they exist only with reference to the knowl *862 edge, or state of mind, of one of the parties. But which party ?
The validity of an inquiry, search or arrest frequently turns on the officer’s state of mind, that is, whether under the facts he had reasonable cause to believe that a crime had been committed or to suspect the defendant of a crime. (People v. Simon, supra, 45 Cal.2d 645, 650; People v. Harris, 146 Cal. App.2d 142, 145-146 [304 P.2d 178] ; People v. West, 144 Cal. App.2d 214, 218-219 [300 P.2d 729].)
Justice Brandéis has said that the most valued right of civilized men is the right, as against the government, to be let alone (Olmstead v. United States, 277 U.S. 438, 478 [48 S.Ct. 564, 72 L.Ed. 944, 66 A.L.R. 376], dissent). But this right, like others, varies in inverse ratio to social necessity. At one end of the spectrum is the innocent citizen, faced with unjustified police action. At the other end is the criminal whose felonious act has been witnessed by a hotly pursuing policeman. The former has a complete right to be let alone; the latter has none. In the center of the spectrum are the various shadings of circumstance where investigating officers encounter their subjects in varying degrees of suspicion, on the one side, and constitutional immunity, on the other.
Arguably, the accosted citizen and not the officer is the “reasonable man” meant by the statute. The innocent householder, strolling in the evening air, may insist on privacy, refusing to reveal his identity and business to an officer in hot pursuit of a fugitive. If ignorance can baffle inquiry, the legitimate objectives of law enforcement are frustrated. The statute was drawn in the light of court decisions dealing with “reasonable cause” on the part of the officer. It was designed to prevent arbitrary, that is, causeless police action.
In short, propriety of the police inquiry turns on the knowledge of the officer. His information, none other, must meet the reasonable man standard. Facts outside his ken, however incriminating, cannot justify inquiry and arrest.
A search may not be justified by what it produces. (People v. Brown, 45 Cal.2d 640, 643 [290 P.2d 528].) Some of the suspicious circumstances produced here—the tapered trousers, the probable falsehood regarding “Mike,” the running man described by Mr. Little, defendant’s status as a parolee—were unknown to the officer when he accosted defendant. These circumstances may not be used in retroactive support of a finding of reasonable cause.
The officer, however, had received a report of a male prowler. Although the hour was not late, it was dark.
*863 He saw an isolated male pedestrian walking along the street in a suburban residential neighborhood at a point five blocks away from a reported prowling incident. It was the officer’s duty to investigate the prowling complaint and to provide such protection to the community as was possible under the circumstances. He did not instigate a roadblock or a general roundup of unsuspecting citizenry. He did not indulge in indiscriminate stoppage of pedestrians brought outdoors by the presence of business establishments or public transportation facilities. The situation permitted a selective inquiry of a single pedestrian who might be or have knowledge of the prowler. We cannot label inquiry under these circumstances as arbitrary or offensive. Rather, the inquiry was in the area of reasonable public safety requirements. The circumstances are strongly reminiscent of the Supreme Court’s statement in People v. Simon, supra, 45 Cal.2d 645, 650: “There is, of course, nothing unreasonable in an officer’s questioning persons outdoors at night . . . and it is possible that in some circumstances even a refusal to answer would, in the light of other evidence, justify an arrest.” There was substantial evidence to sustain the trial court’s finding under the third phase of the statute.
We have indulged in this tripartite and somewhat artificial dissection of the ease for the sake of clarity and because the statute has not yet been construed in any reported decision. We have also attempted to satisfy ourselves that we should not, on our own motion, engage in constitutional inquiries. Arguably the statute is an antiloitering law which permits arrests on suspicion alone. Yet, it erects a built-in buffer against arbitrary police action. The ban against loitering and wandering cannot be isolated from the companion requirement of circumstances reasonably involving public safety. The statutory demand upon the private citizen for identification and explanation arises only in the context of the same circumstances. When the three parts of the statute are put together they present no patent constitutional objections and indeed seem to be consistent with doctrines stated in People v. Simon, supra, and similar cases. Under the circumstances, we see no reason to disturb the judgment on constitutional grounds.
Judgment affirmed.
Mundt, P. J., concurred.