[Crim. No.· 16822. Second Dist., Div. Five. Mar. 26, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
DARRYL WESLEY CAYLOR, Defendant and Appellant.

■■■■■■■■■■■■

## COUNSEL

Dahlstrum, Walton & Butts and Nancy Cunningham for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Jack K. Weber, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**FRAMPTON, J.\*—**

### Statement of the Case

By consolidated informations the defendant was charged with violation of section 11500 of the Health and Safety Code (possession of heroin, count 1), with violation of section 11555 of the Health and Safety Code (possession of device, etc. for unlawfully injecting narcotics, count 2), a misdemeanor, with violation of section 11721 of the Health and Safety Code (under influence of narcotics, count 3), a misdemeanor, with burglary (count 4), and with receiving stolen property (count 5). By amendment he was charged with having suffered a prior conviction of violating the Marijuana Tax Act, a felony, on November 30, 1955, in the District Court of the United States, Southern District of California, and with having served a term of imprisonment therefor in a federal prison.

The defendant entered a plea of not guilty, and denied the truth of the allegation of prior conviction. His motions under sections 995 and 1538.5 of the Penal Code were denied. He waived trial by jury and it was stipulated that the cause be heard on the evidence taken at the preliminary examination and the evidence taken on the hearing of the 1538.5 motion, with both sides reserving the right to introduce additional evidence.

The defendant was found guilty upon counts 1 and 5, and not guilty upon counts 2, 3 and 4. A motion for a new trial was denied and the prior conviction was stricken. Proceedings were suspended and probation was granted, after hearing, for the period of five years. The appeal is from the judgment (order granting probation). (Pen. Code, § 1237.)

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

■■■■■■■■

## Statement of Facts

Kenneth Briscoe, a Deputy Sheriff of Los Angeles County, was on routine patrol with his partner on the evening of April 4, 1968. At approximately 11:30 p.m., he observed the defendant walking in a westerly direction on Edmond Drive along the edge of the road. Edmond Drive is a dark residential street with no sidewalks and little or no street lighting. It is situated in the City of Rosemead.

This particular area was being patrolled because there had been numerous prowler complaints and residential burglaries in the neighborhood. When the defendant suddenly appeared "out of nowhere," Deputy Briscoe felt that it would be in the best interest to stop the defendant to determine who he was, where he lived, and why he was in the neighborhood at this time of night.

Deputy Briscoe and his partner stopped the defendant, approached him, and asked him for some identification. The defendant slowly reached into his pocket and withdrew a wallet. He began to thumb through the wallet as if he were looking for identification. While doing this, the defendant shielded the wallet so that the officers could not see in it. The officers asked the defendant his name at least six times, but the latter remained silent and continued to thumb through his wallet. After searching through his wallet for approximately two minutes, the defendant stated "I don't have any I.D. on me. If you guys want to know who I am, you'll have to take me to my pad."

When asked where he lived, the defendant replied "A couple blocks from here on Delta." He stated that he was on his way home. Deputy Briscoe intended to take the defendant home, but the latter refused to divulge his name or his address. Deputy Briscoe testified that there was a Delta Street in the area but that it was nearly a mile from the point where the defendant was stopped. Later, it was stipulated that Delta Street was approximately two and one-half blocks away from the point where the defendant was stopped. When stopped the defendant was walking toward Delta Street.

The defendant was placed under arrest for failing to identify himself when Deputy Briscoe felt that he was not going to furnish identification. Deputy Briscoe thought that the defendant might commit a burglary if he were permitted to go. The defendant's constitutional rights were read to him and he was searched for weapons. During the search, narcotic paraphernalia was found in the defendant's right hand front pants pocket. A white powdery substance, which was contained in a small packet folded in newspaper, was found in the defendant's left hand front pants pocket.

Checks were found tucked into his waistband. The defendant was then informed that he was also under arrest "for burglary, the checks, and possession of heroin and narcotics paraphernalia."

On the way to the station, the defendant was asked where he got the checks. He claimed that "a friend gave them to me." He also stated that the white powder was milk sugar. On April 5, the defendant was interviewed by Deputy Sheriff O'Neil at the Temple City station. He was again advised of his constitutional rights. During this interview, the defendant stated that at about 4:30 p.m. on April 4, 1968, he had purchased the checks from a person known to him as Johnny Zamora for $22 cash.[1] When asked if Zamora had informed him that the checks were stolen, the defendant replied "no, but . . . he felt himself that they were hot."

It was established that the white powder was heroin and that morphine or a morphine derivative was present on the paraphernalia.

## Defense

The defendant did not testify at either preliminary examination which resulted in the filing of the two informations, later consolidated for trial.

On the hearing of the 1538.5 motion, the defendant testified that on the night of his arrest, he was walking along Edmond Drive toward his house, two and one-half blocks away from the point where he was stopped; that about 11:30 that evening, police officers stopped him and asked him for identification; he did not produce any identification, but within two minutes from the time he was first stopped he gave the officers his name. He testified further that he gave the officers his address, stating he "could prove it if you [the officers] would take me to my house."

## Contentions on Appeal

The defendant urges that the officers did not have probable cause to arrest him for violation of section 647, subdivision (e) of the Penal Code; that because there was lack of probable cause for the arrest, the search and seizure which followed was unlawful and the evidence seized as the result of such search should have been suppressed.

At the time of the arrest, section 647 of the Penal Code read in pertinent part as follows: "Every person who commits any of the following acts shall

[1] Roland Raymond Allaire testified that he was the owner of El Monte Battery Company. He identified seven pages of checks, three checks to the page, as having been stolen from his place of business sometime between 7 p.m. on April 3 and 7:40 a.m. on April 4, 1968. These were the checks found tucked in the defendant's waistband.

be guilty of disorderly conduct, a misdemeanor: . . . . (e) Who loiters or wanders upon the streets or from place to place without apparent reason or business and who refuses to identify himself and to account for his presence when requested by any. peace officer so to do, if the surrounding circumstances are such as to indicate to a reasonable man that the public safety demands such identification." (Stats., 1967, ch. 1317, § 1, p. 3141.)

■ To sustain a conviction under Penal Code section 647, subdivision (e) the prosecution must establish: (1) that the accused was loitering or wandering without apparent reason or business; (2) that, although requested by an officer, he refused to identify himself and account for his presence, and (3) that public safety considerations reasonably indicated a necessity for the defendant's identification. (*People* v. *Bruno,* 211 Cal.App.2d Supp. 855, 859 [27 Cal.Rptr. 458].)

Antiloitering statutes "represent an arena for conflict between healthy antipathy to the 'roust' or arrest on suspicion, on the one hand, and legitimate interests in crime prevention, on the other. Security against arbitrary police intrusion is basic to a free. society. [Citation omitted.] Thus, arrests on mere suspicion offend our constitutional notions. Frequently they amount to arrest for status or condition instead of unlawful conduct. Most of the provisions of the now repealed vagrancy statute (former Pen. Code, § 647) were concerned with status rather than conduct.

"At the opposite side of the scale is the view that law enforcement officers need not wring their hands in constitutional frustration while nighttime prowlers and potential thieves and rapists skulk through our neighborhoods. The usual accommodation between these warring notions is the concept of 'reasonable cause,' that is, an officer may properly inquire, search and sometimes arrest if he has reasonable cause to believe that a crime has been committed. [Citation omitted.]

"Section 647, subdivision (e) is itself the product of such a reconciliation. . . ." (*People* v. *Bruno, supra,* 211 Cal.App.2d Supp. 855, 859.)

■ The word loitering as used in a criminal statute has a sinister or wrongful as well as a reasonable definite implication. As proscribed by such a statute it connotes lingering in the designated places for the purpose of committing a crime as opportunity may be discovered. It excludes the notion of waiting for a lawful purpose. (*In re Cregler,* 56 Cal.2d 308, 310-311 [14 Cal.Rptr. 289, 363 P.2d 305]; *People* v. *Weger,* 251 Cal.App.2d 584, 592 [59 Cal.Rptr. 661].) ■ Similarly here, if prohibited loitering consists of waiting for evil purposes, so prohibited wandering consists of movement for evil purposes. (*People* v. *Bruno, supra,* 211 Cal.App.2d Supp. 855, 861.)

■ A police officer in the discharge of his duties may detain and question a person when the circumstances are such as would indicate to a reasonable man in a like position that such a course is necessary to the proper discharge of those duties. (*People* v. *One 1960 Cadillac Coupe,* 62 Cal.2d 92, 95-96 [41 Cal.Rptr. 290, 396 P.2d 706].)

■ Here the officers stopped the defendant on a darkened street at 11:30 at night in a neighborhood that was being patrolled because of numerous burglary and prowler complaints. Deputy Briscoe felt, under the circumstances, that it was in the best interests of the community to stop the defendant to determine who he was, where he lived, and why he was in the neighborhood. (Cf. *People* v. *Cruppi,* 265 Cal.App.2d 9, 11-13 [71 Cal.Rptr. 42].) When asked several times, the defendant failed to divulge his name, and did not give his street address, finally telling the officers "If you guys want to know who I am, you'll have to take me to my pad." When asked for his address, he would only say that he lived "a couple of blocks from here on Delta." Under these circumstances, Deputy Briscoe had probable cause to believe that the defendant had committed a violation of section 647, subdivision (e) of the Penal Code, a misdemeanor, in his presence and the arrest which followed was lawful.

■ The search made which turned up the contraband, and the stolen checks was incidental to the lawful arrest. The contraband and stolen checks, having been lawfully seized, were properly admitted in evidence.

The judgment (order granting probation) is affirmed.

Stephens, Acting P. J., and Aiso, J., concurred.