658 F.2d 1362
 Edward LAWSON, Plaintiff-Appellee,
v.
William KOLENDER, in his capacity as Chief of Police of San
Diego, John Duffy, in his capacity as Sheriff of
San Diego County, et al., Defendants-Appellants,
and
H. A. Porazzo, in his capacity as Deputy Chief Commander of
the California Highway Patrol, Defendant-Appellant.
 Nos. 79-3629, 79-3633, 79-3641, and 79-3685.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted May 6, 1981.
Decided Oct. 15, 1981.
 
 Robert H. Lynn, San Diego, Cal., Lucas Guttentag, Center for Law in the Public Interest, Los Angeles, Cal., for Lawson.
 A. Wells Peterson, John W. Wood, Deputy City Atty., Paul F. Sowa, Duffy, Larson, Sanchez & Moulton, San Diego, Cal., for Kolender.
 Appeal from the United States District Court for the Southern District of California.
 Before FERGUSON and BOOCHEVER, Circuit Judges, and REDDEN,* District Judge.
 BOOCHEVER, Circuit Judge.
 
 
 1
 This case involves the constitutionality of section 647(e) of the California Penal Code,[1] a vagrancy statute, and whether a pro se litigant has a right to jury trial in spite of his failure to file proposed jury instructions seven days in advance of trial as required by local rules of court.
 
 
 2
 On approximately fifteen occasions between March, 1975 and January, 1977, Edward Lawson was stopped by law enforcement officials. On each occasion, he was detained or arrested on the basis of California Penal Code § 647(e). Lawson was prosecuted only twice for the alleged offenses; one resulted in dismissal, the other in conviction. Lawson filed a complaint seeking: (1) a declaratory judgment that section 647(e) is unconstitutional; (2) a mandatory injunction restraining the enforcement of the section; and (3) compensatory and punitive damages against the various officers who arrested him because they deprived him of his constitutional rights.
 
 
 3
 Following a trial, the district court filed a memorandum opinion and judgment. The district court found that the statute was overbroad, noting that "a person who is stopped on less than probable cause cannot be punished for failing to identify himself." The court therefore enjoined enforcement of the statute. The court held, however, that Lawson could not recover damages because each officer had a good faith belief that each "contact and/or arrest was lawful." H. A. Porazzo, the named state official, appeals contending that the statute is constitutional.[2] Lawson cross-appeals contending that the district court erred in denying him a jury trial. We affirm the district court ruling that the statute is unconstitutional but reverse the court's denial of a jury trial.
 
 I. CONSTITUTIONALITY OF SECTION 647(e)
 A. VAGUENESS
 1. Introduction
 
 4
 In Powell v. Stone, 507 F.2d 93 (9th Cir. 1974), rev'd on other grounds, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), we struck down a vagrancy ordinance from Henderson, Nevada, that was virtually identical to section 647(e). The ordinance was void for vagueness both because it failed to give a person of ordinary intelligence fair notice that his contemplated conduct was forbidden and because it encouraged arbitrary and erratic arrests and convictions. Id. at 95. We also held that the ordinance violated the fourth amendment by permitting arrests without probable cause. Id. at 96. See also Anderson v. Nemetz, 474 F.2d 814, 817 (9th Cir. 1973). For the reasons expressed in Powell, section 647(e) is also unconstitutional unless the California appellate courts have authoritatively construed the statute so as to cure its defects. We will assess the constitutionality of the statute in light of the California courts' interpretations of it.[3]
 
 
 5
 The California courts have considered the constitutionality of section 647(e) on several occasions. Each time the statute has been upheld.[4] The most recent and extensive discussion is contained in People v. Solomon, 33 Cal.App.3d 429, 108 Cal.Rptr. 867 (1973), cert. denied, 415 U.S. 951, 94 S.Ct. 1476, 39 L.Ed.2d 567 (1974). Solomon held that section 647(e) did not violate the federal constitution because: (1) it was not vague, 33 Cal.App.3d at 435-36, 108 Cal.Rptr. 867; (2) the requirement of identification did not infringe upon the right to be free from unreasonable searches and seizures, id. at 436, 108 Cal.Rptr. 867; (3) the identification requirement did not violate the right against self-incrimination, id. at 436-38, 108 Cal.Rptr. 867; and (4) the statute was not invalid as susceptible to arbitrary enforcement, id. at 438-39, 108 Cal.Rptr. 867.
 
 
 6
 Section 647(e)[5] contains three essential elements: (1) loitering on the streets; (2) refusal to identify and account for one's presence on request by a police officer; and (3) in circumstances involving public safety. The courts have placed the following limitations on the essential elements. "Loitering" means "lingering in ... designated places for the purpose of committing a crime as opportunity may be discovered", while "wandering" means "movement for evil purposes." People v. Caylor, 6 Cal.App.3d 51, 56, 85 Cal.Rptr. 497, 501 (1970). The term "identification and accounting" is not satisfied by mere identification but "comprehends a genuine identification ... carrying reasonable assurance that the identification is authentic and providing means for later getting in touch with the person who has identified himself." Solomon, 33 Cal.App.3d at 438, 108 Cal.Rptr. 867.[6] The phrase "surrounding circumstances ... indicate to a reasonable man that public safety demands such identification" is comparable to the standard set forth in Terry v. Ohio, 392 U.S. 1, 30, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889 (1968), justifying a brief detention. Solomon, 33 Cal.App.3d at 435, 108 Cal.Rptr. 867.
 
 
 7
 We must decide whether the statute as interpreted by the California courts violates the vagueness doctrine[7] because: (1) it is in violation of the fourth amendment proscription against searches and seizures; (2) it contains a vague enforcement standard which is susceptible to arbitrary enforcement; or (3) it fails to give fair and adequate notice of the type of conduct prohibited. We will address each issue separately.
 
 2. Fourth Amendment
 
 8
 The statute, in essence, requires a person to provide reliable identification when requested by a police officer who has a reasonable suspicion of criminal activity under the standard of Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).[8] Whether such a requirement violates the fourth amendment's proscription against unreasonable searches and seizures was specifically left open by the Supreme Court's decision in Brown v. Texas, 443 U.S. 47, 53 n.3, 99 S.Ct. 2637, 2641, 61 L.Ed.2d 357 (1979) (holding that a person could not be required to furnish identification if not reasonably suspected of any criminal conduct).
 
 
 9
 Because Terry approved a more substantial intrusion upon the person (a limited patdown search for weapons) when a police officer possesses "articulable suspicion less than probable cause," 392 U.S. at 31, 88 S.Ct. at 1885, the Solomon court concluded that a temporary detention followed by a request for identification also was justifiable.[9] 33 Cal.App.3d at 435-37, 108 Cal.Rptr. 867. The Solomon court applied the Terry test by balancing the public interest with the individual's right to personal security free from arbitrary interference by law officers. It found that "the public need involved, protection of society against crime, is strong, while the individual right involved, anonymity when loitering on the streets under suspicious circumstances, is weak." 33 Cal.App.3d at 436-37, 108 Cal.Rptr. 867.
 
 
 10
 Although the prevention of crime is "a weighty social objective," Brown, 443 U.S. at 52, 99 S.Ct. at 2641, we agree with the courts and commentators who have concluded that statutes like section 647(e), which require the production of identification, are in violation of the fourth amendment. The two reasons for this conclusion are that as a result of the demand for identification, the statutes bootstrap the authority to arrest on less than probable cause,[10] and the serious intrusion on personal security outweighs the mere possibility that identification may provide a link leading to arrest.
 
 
 11
 The first reason was explained by the Second Circuit when it considered a New York vagrancy statute which, as written, was very similar to section 647(e) as construed by the Solomon court.[11] United States ex rel. Newsome v. Malcolm, 492 F.2d 1166, 1171-74 (2d Cir. 1974), aff'd sub nom. Lefkowitz, Attorney General of New York v. Newsome, 420 U.S. 283, 95 S.Ct. 886, 43 L.Ed.2d 196 (1975). In finding the statute unconstitutional, the Newsome court noted that such vagrancy statutes "conflict with the deeply rooted Fourth Amendment requirement that arrests must be predicated on probable cause." Id. at 1172.
 
 
 12
 As we stated in Powell, this vagrancy ordinance subverts the probable cause requirement.
 
 
 13
 It authorizes arrest and conviction for conduct that is no more than suspicious. A legislature could not reduce the standard for arrest from probable cause to suspicion; and it may not accomplish the same result indirectly by making suspicious conduct a substantive offense. Vagrancy statutes do just that, for they authorize arrest and conviction for the vagrancy offense if there are reasonable grounds to suspect that the accused may have committed, or if left at large will commit, a more serious offense. Police are duty-bound to investigate suspicious conduct, and founded suspicion will support an investigative stop and inquiry. But more is required to justify arrest.
 
 
 14
 507 F.2d at 96 (citations omitted). Other courts considering similar statutes have reached the same conclusion.[12] Vagrancy ordinances cannot turn otherwise innocent conduct into a crime.
 
 
 15
 The second reason why we believe section 647(e) intrudes upon the fundamental right to be secure against unreasonable searches and seizures is that the Solomon court improperly applied the Terry balancing test. We agree that prevention of crime is "a weighty social objective." Brown v. Texas, 443 U.S. 47, 52, 99 S.Ct. 2637, 2641, 61 L.Ed.2d 357 (1979). The right of an individual wanderer to be free from the governmental intrusion of being required to furnish identification, however, is also substantial. The Supreme Court has extolled the freedom of locomotion.
 
 
 16
 Persons "wandering or strolling" from place to place have been extolled by Walt Whitman and Vachel Lindsay. The qualification "without any lawful purpose or object" may be a trap for innocent acts....
 
 
 17
 Walkers and strollers and wanderers may be going to or coming from a burglary. Loafers or loiterers may be "casing" a place for a holdup....
 
 
 18
 The difficulty is that these activities are historically part of the amenities of life as we have known them. They are not mentioned in the Constitution or in the Bill of Rights. These unwritten amenities have been in part responsible for giving our people the feeling of independence and self-confidence, the feeling of creativity. These amenities have dignified the right of dissent and have honored the right to be nonconformists and the right to defy submissiveness. They have encouraged lives of high spirits rather than hushed, suffocating silence.
 
 
 19
 They are embedded in Walt Whitman's writings, especially in his "Song of the Open Road." They are reflected, too, in the spirit of Vachel Lindsay's "I Want to Go Wandering," and by Henry D. Thoreau.
 
 
 20
 Papachristou v. City of Jacksonville, 405 U.S. 156, 164, 92 S.Ct. 839, 844, 31 L.Ed.2d 110 (1972) (footnotes omitted).[13]
 
 
 21
 Additionally, we do not agree with the Solomon court's premise that a pat down is necessarily a more substantial intrusion than the identification requirement contained in section 647(e). See 33 Cal.App.3d at 435, 108 Cal.Rptr. 867. There is only surface appeal to the argument that because a pat down involves greater physical intimidation and requires more direct bodily contact than the production of identification, the latter may be required whenever the former is permitted. Although the pat down can be a degrading experience, especially when conducted in public view,[14] it is ephemeral and, in the absence of weapons, lacks collateral consequences. The potential for subsequent police action or abuse is not materially enhanced.
 
 
 22
 In contrast, police knowledge of the identity of an individual they have deemed "suspicious" grants the police unfettered discretion to initiate or continue investigation of the person long after the detention has ended. Information concerning the stop, the arrest and the individual's identity may become part of a large scale data bank. In fact, the public concern advanced in support of section 647(e) is the prevention of crime, Solomon, 33 Cal.App.3d at 436-37, 108 Cal.Rptr. 867, namely the state's interest in allowing police officers to gather information which will aid them in detecting crime.[15] The Supreme Court has recognized the significant intrusion occasioned by an identification requirement in a statute. See Brown v. Texas, 443 U.S. 47, 52, 99 S.Ct. 2637, 2641, 61 L.Ed.2d 357 (1979). We believe that the serious intrusion on personal security outweighs the mere possibility that identification may provide a link leading to arrest.
 
 
 23
 The cases relied upon by the appellants are inapposite. In United States v. Martinez-Fuerte, 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976), the Supreme Court held that a vehicle may be stopped at a fixed checkpoint near the border for brief questioning of its occupants even though there is no reason to believe the particular vehicle contains illegal aliens. Id. at 556-64, 96 S.Ct. at 3082-3085. In so holding, the Court weighed the public interest against the fourth amendment interest of the individual. Id. at 556-60, 96 S.Ct. at 3082-3084. The government interests recognized in Martinez, including the importance of stopping the flow of illegal aliens at locations close to the border, are simply not applicable here, where we consider the right of the general populace of California to move throughout the state without restriction. The same can be said about the government's reliance on Pennsylvania v. Mimms, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977). In Mimms, the Supreme Court held that asking the driver of a car which had been stopped for a traffic violation to step out of the car did not violate the guarantees contained in the fourth amendment. The Court found that the government's justification, safety of the officer, outweighed the minimal intrusion upon the person who had already been legitimately stopped. Id. at 110-11, 98 S.Ct. at 333. The government's justification of the section 647(e) identification requirement is not as significant since an officer's demand may be made in the absence of any known unlawful conduct, and the intrusion is not de minimis. Moreover, a license to operate a vehicle is a privilege, see Serenko v. Bright, 263 Cal.App.2d 682, 70 Cal.Rptr. 1, 4-5 (1968), not a constitutionally protected right like the freedom to go where one pleases. See Papachristou, 405 U.S. at 163-65, 92 S.Ct. at 843-845.
 
 
 24
 We hold that section 647(e) impermissibly intrudes upon the fourth amendment's proscription against unreasonable searches and seizures.
 
 3. Arbitrary Enforcement
 
 25
 A statute violates the due process clause when it is so vague and indefinite as to encourage arbitrary and discriminatory enforcement. Papachristou, id. at 162, 92 S.Ct. at 843. The Solomon court held that section 647(e) was not so susceptible because it becomes operative only when the surrounding circumstances indicate to a reasonable man some impairment of the public safety, and when such circumstances can be objectively defined and articulated. Solomon, 33 Cal.App.3d at 438-39, 108 Cal.Rptr. 867. Accord State v. Ecker, 311 So.2d 104, 110 (Fla.), cert. denied, 423 U.S. 1019, 96 S.Ct. 455, 46 L.Ed.2d 391 (1975).
 
 
 26
 We again find ourselves in agreement with United States ex rel. Newsome v. Malcolm, 492 F.2d 1166 (2d Cir. 1974), aff'd sub nom. Lefkowitz, Attorney General of New York v. Newsome, 420 U.S. 283, 95 S.Ct. 886, 43 L.Ed.2d 196 (1975). We believe that section 647(e) impermissibly grants the police virtually unfettered discretion by providing no standards for determining whether a person is engaged in suspicious loitering, and by failing to specify what forms of identification are sufficient to satisfy the statute. This result has been reached by other courts considering statutes similar to section 647(e)[16]. Moreover, the Solomon approach, although providing safeguards against unwarranted convictions because arrest decisions are subject to independent review, does not protect against arbitrary arrests or police harassment, which are also prohibited by the fourth amendment.[17]
 
 
 27
 Under section 647(e) it could well be conceivable that a group might lawfully meet in support of an unpopular cause. One waiting outside for the meeting to commence could be required, at the unbridled discretion of an officer, to furnish identification at the peril of being arrested. Section 647(e) could well create a chilling effect on the exercise of first amendment rights.
 
 As the court noted in Newsome:
 
 28
 the section could lend itself to the abuse of pretextual arrest of people who are members of unpopular groups or who are merely suspected of engaging in other crimes, without sufficient probable cause to arrest for the underlying crime.
 
 
 29
 492 F.2d at 1173 (footnote omitted). This case furnishes a similar example. In less than two years, Lawson was arrested on approximately fifteen occasions for violating section 647(e). Of those fifteen arrests, only two resulted in prosecution, and one of those cases was dismissed.[18] We hold that section 647(e) violates the due process clause because it encourages arbitrary and discriminatory enforcement.
 
 4. Fair and Adequate Notice
 
 30
 The due process clause requires that a penal statute " 'give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden....' "[19] The Solomon court held that section 647(e) met this test because
 
 
 31
 the person requested to identify himself is put on direct notice as to what constitutes the unlawful conduct, for before any violation of the statute can occur the request for identification must first be made.
 
 
 32
 33 Cal.App.3d at 435, 108 Cal.Rptr. 867.
 
 
 33
 We believe that this reasoning circumvents the question of whether fair notice is provided.[20] Due process demands both reasonable notice to the possible offender and a specific standard to guide police. Powell v. Stone, 507 F.2d 93, 96 (9th Cir. 1974), rev'd on other grounds, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1965). Section 647(e) fails to identify any commonly understood act of suspicious circumstances of which ordinary citizens are aware; it authorizes arrest merely "if suspicion of criminality happens to be created in the mind of the arresting officer."[21]
 
 
 34
 An innocent person cannot generally know when a police officer has reasonable cause to believe that his behavior warrants further investigation for criminal activity, and therefore cannot know when refusal to identify himself will be a crime.
 
 
 35
 People v. De Fillippo, 80 Mich.App. 197, 262 N.W.2d 921, 923 (1977), rev'd on other grounds, 443 U.S. 31, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979). When a person is stopped by the police and asked for identification, the individual must either comply with the request or face arrest without any basis for determining whether the denial constitutes a violation of the statute. Since "(n)o one may be required under peril of life, liberty or property to speculate as to the meaning of penal statutes," Lanzetta v. New Jersey, 306 U.S. 451, 453, 59 S.Ct. 618, 619, 83 L.Ed. 888 (1939), section 647(e) is unconstitutionally vague.
 
 B. SELF-INCRIMINATION
 
 36
 Because we hold that section 647(e) is void for vagueness, we need not decide whether the identification requirement of the statute violates the privilege against self-incrimination protected by the fifth amendment. We note, however, that two state courts have struck down similar statutes on the grounds that an individual may not be compelled to identify himself or herself.[22] These cases rely on Justice White's concurring opinion in Terry in which he stated that
 
 
 37
 the person stopped is not obliged to answer, answers may not be compelled, and refusal to answer furnishes no basis for arrest ...
 
 
 38
 Terry, 392 U.S. at 34, 88 S.Ct. at 1886. Although the Supreme Court has never directly addressed the issue, the Court has cited Justice White's statement with approval on several occasions.[23]
 
 II. DENIAL OF A JURY TRIAL
 
 39
 Lawson contends that the court abused its discretion in denying him a jury trial. When Lawson filed his initial complaint, he demanded a jury trial. During the course of this extended litigation, Lawson was represented by several attorneys, and on March 14, 1979, he was substituted in pro per by stipulation. On March 21, 1979, the trial began and Lawson asked the judge why there was no jury. The court informed Lawson that his right to a jury trial had automatically been waived because he failed to file proposed jury instructions seven days in advance of trial, as required by two local rules of court.[24] Lawson then requested a continuance to submit instructions, but his request was denied.
 
 
 40
 The local rules do not provide for automatic waiver of a jury trial for failure to submit instructions. Nevertheless, the appellants argue that such a waiver may fairly be implied. Under Federal Rule of Civil Procedure 38(b) and (d), a party waives the right to a jury trial if a timely demand is not made. The appellants argue that the local rules implement Rule 38 by setting procedural requirements necessary to the orderly administration of a jury trial. The seven-day rule contemplates that parties and the court will have adequate time to review the proposed jury instructions for form and content. The appellants argue that by failing to comply with the local rules, Lawson waived his right to a jury trial and therefore the court did not abuse its discretion in so holding.
 
 
 41
 We believe that this sanction was too harsh. The right to a jury trial is inviolate and should be preserved. Fed.R.Civ.P. 38(a). See Colgrove v. Battin, 413 U.S. 149, 152, 93 S.Ct. 2448, 2450, 37 L.Ed.2d 522 (1973). Moreover, since the local rules do not expressly provide for automatic waiver and are essentially for the court's convenience, Lawson's right to a jury trial should not have been denied where he had no warning of this severe sanction and alternative sanctions existed. In fact Rule 245-3, by granting the judge discretion to receive late requests, infers that loss of the right to submit instructions, not the right to a jury trial, is the type of sanction to be imposed. Cf. Rutledge v. Electric Hose & Rubber Co., 511 F.2d 688, 674 (9th Cir. 1975) (local rule regarding demand for jury trial is valid where it does not impose basic procedural requirements beyond Fed.R.Civ.P. 38).
 
 
 42
 Upon remand, the jury may reach the same conclusion the judge did and find that the police officers relied upon the statute in good faith in making the arrests. On the other hand, the jury may instead find that the arrests were not made in good faith and that they were merely made for the purpose of harassing Lawson, since very few of the arrests ended in prosecution. The good faith of the defendants is a factual issue which Lawson was entitled to have a jury determine. Under the circumstances of this case, we hold that the district court abused its discretion in denying a jury trial.
 
 
 43
 The case is AFFIRMED in part and REVERSED in part, and REMANDED for a jury trial to determine the good faith of various officers involved.[25]
 
 
 
 *
 Honorable James A. Redden, United States District Judge for the District of Oregon, sitting by designation
 
 
 [1]
 Section 647(e) provides:
 Every person who commits any of the following acts is guilty of disorderly conduct, a misdemeanor: .... (e) Who loiters or wanders upon the streets or from place to place without apparent reason or business and who refuses to identify himself and to account for his presence when requested by any peace officer so to do, if the surrounding circumstances are such as to indicate to a reasonable man that the public safety demands such identification.
 Cal.Penal Code § 647(e) (Deering 1971).
 
 
 [2]
 The other defendants also appeal, and all the appeals have been consolidated for argument and decision
 
 
 [3]
 In Wainwright v. Stone, 414 U.S. 21, 22-23, 94 S.Ct. 190, 192, 38 L.Ed.2d 179 (1973), the Supreme Court held that for purposes of determining vagueness a state statute must be reviewed as the state's highest court has interpreted it. Moreover, the construction placed upon a statute by a state's intermediate appellate court which was left undisturbed, though not specifically passed upon, on appeal to the state's highest court is similarly binding on the federal courts. Thorington v. Cash, 494 F.2d 582, 587 (5th Cir. 1974); Miami Parts & Spring, Inc. v. Champion Spark Plug Co., 364 F.2d 957, 965-67 (5th Cir. 1966) (rule applies if state supreme court's denial of hearing of the appellate court's decision is a decision on merits); Echevarria v. Carey, 402 F.Supp. 183, 185 n.7 (S.D.N.Y.1975), aff'd, 538 F.2d 309 (2d Cir.), vacated on other grounds, 429 U.S. 808, 97 S.Ct. 44, 50 L.Ed.2d 68 (1976). The California Supreme Court denied a hearing in People v. Solomon, 33 Cal.App.3d 429, 439, 108 Cal.Rptr. 867 (1973) (Tobriner and Mosk, JJ., dissenting), cert. denied, 415 U.S. 951, 94 S.Ct. 1476, 39 L.Ed.2d 567 (1974), discussed in text infra. The decision to grant a hearing, however, is discretionary with the California Supreme Court. See People v. Davis, 147 Cal. 346, 81 P. 718, 719 (1905); J. Poulos & B. Varner, Review of Intermediate Appellate Court Decisions in California, 15 Hastings L.J. 11, 15-16 (1963); Comment, To Hear or Not to Hear: A Question for the California Supreme Court, 3 Stanford L.Rev. 243, 266-67 (1951). Although a denial of hearing is not to be regarded as an approval of a California Court of Appeal opinion, the California Supreme Court has stated that "it does not follow that such a denial is without significance as to our views." Amaya v. Home Ice, Fuel & Supply Co., 59 Cal.2d 295, 379 P.2d 513, 519, 29 Cal.Rptr. 33 (1963) (quoting Di Genova v. State Bd. of Educ., 57 Cal.2d 167, 178, 367 P.2d 865, 18 Cal.Rptr. 369 (1962)). See People v. Triggs, 8 Cal.3d 884, 506 P.2d 232, 236, 106 Cal.Rptr. 408 (1973); Kanner, It's a Busy Court: the Effect of Denial of Hearing by the Supreme Court on Court of Appeals Decisions, 47 Calif.St.B.J. 188 (1972). Moreover, California intermediate courts will, at least occasionally, show greater deference to another intermediate court's decision where review has been denied. People v. Rowland, 19 Cal.App.2d 540, 65 P.2d 1333, 1334 (1937). Most importantly, a decision by a California intermediate court is binding upon all California courts exercising inferior jurisdiction until the Supreme Court decides the issue or a conflicting intermediate decision is issued. Auto Equity Sales, Inc. v. Superior Court, 57 Cal.2d 450, 369 P.2d 937, 939-40, 20 Cal.Rptr. 321 (1962); In Re Ferrie, 115 Cal.App.3d 729, 171 Cal.Rptr. 496, 498 (1981). The Solomon decision has been the law of California for eight years. Under these circumstances, we will treat the Solomon opinion as authoritative especially since Lawson agreed below that the statute should be reviewed as construed by the Solomon court and does not now contend otherwise. The same result was reached in Miranda v. Hicks, 388 F.Supp. 350, 355-56 (C.D.Cal.1974), rev'd on other grounds, 422 U.S. 332, 95 S.Ct. 228, 45 L.Ed.2d 223 (1975) (California obscenity statute had been authoritatively construed by California courts where California intermediate court rendered a decision and a hearing was denied by the California Supreme Court)
 
 
 [4]
 People v. Solomon, 33 Cal.App.3d 429, 108 Cal.Rptr. 867 (1973), cert. denied, 415 U.S. 951, 94 S.Ct. 1476, 39 L.Ed.2d 567 (1974); People v. Caylor, 6 Cal.App.3d 51, 85 Cal.Rptr. 497 (1970); People v. Weger, 251 Cal.App.2d 584, 59 Cal.Rptr. 661 (1967), cert. denied, 389 U.S. 1047, 88 S.Ct. 774, 19 L.Ed.2d 840 (1968); People v. Bruno, 211 Cal.App.2d Supp. 855, 27 Cal.Rptr. 458 (App. Dep't Super.Ct.1962)
 
 
 [5]
 For the complete text of § 647(e), see note 1 supra
 
 
 [6]
 Section 647(e) also requires a person to "account for his presence." In People v. Weger, 251 Cal.App.2d 584, 59 Cal.Rptr. 661, 672-73 (1967), cert. denied, 389 U.S. 1047, 88 S.Ct. 774, 19 L.Ed.2d 840 (1968), the California Court of Appeals held that this requirement did not violate the privilege against self-incrimination. Because of intervening Supreme Court cases, the Solomon court held that accountability could not be required and, thus, to avoid impinging upon the privilege, it construed that requirement as "subordinate and adjunct to" the identification requirement and operative only to the extent it assists in producing reliable, credible identification. 33 Cal.App.3d at 437-38, 108 Cal.Rptr. 867
 
 
 [7]
 The vagueness doctrine concerns cases in which a court, passing upon state or federal statutes, has to determine whether the "words and phrases (of the statute) are so vague and indefinite that any penalty prescribed for their violation constitutes a denial of due process." Champlin Ref. Co. v. Corporation Comm'n, 286 U.S. 210, 243, 52 S.Ct. 559, 568, 76 L.Ed. 1062 (1932). Due process is violated by a criminal statute that fails to provide adequate notice to a person of ordinary intelligence that contemplated conduct is prohibited. The vagueness doctrine can be divided into three related concerns: (1) protecting against arbitrary enforcement of a statute; (2) safeguarding constitutionally protected rights; and (3) providing fair notice of prohibited conduct. Keenan, California Penal Code Section 647(e): A Constitutional Analysis of the Law of Vagrancy, 32 Hastings L.J. 285, 294 (1980) (hereinafter cited as "Keenan"). For a thorough discussion of the vagueness doctrine, see Amsterdam, Federal Constitutional Restrictions on the Punishment of Crimes of Status, Crimes of General Obnoxiousness, Crimes of Displeasing Police Officers, and the Like, 3 Crim.L.Bull. 205 (1967); Note, The Void-for-Vagueness Doctrine in the Supreme Court, 109 U.Pa.L.Rev. 67 (1960); Note, Due Process Requirements of Definiteness in Statutes, 62 Harv.L.Rev. 77 (1948)
 
 
 [8]
 It has been argued that the language relied upon by the Solomon court is not the language of Terry which sets forth the test for a reasonable detention under the fourth amendment. Keenan, supra note 7, at 299. The language relied upon is the following: "would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" Terry v. Ohio, 392 U.S. 1, 21-22, 88 S.Ct. 1868, 1879-1880, 20 L.Ed.2d 889 (1968). See Solomon, 33 Cal.App.3d at 435, 108 Cal.Rptr. 867. The critic correctly points out that the applicable test under the fourth amendment requires that a police officer making a detention " 'be able to point to specific and articulable facts which, taken together with rational inferences from these facts,' reasonably warrant the conclusion that the individual is involved in criminal activity." Keenan, supra note 7, at 299 (quoting Terry, 392 U.S. at 21, 88 S.Ct. at 1879). We believe that the Solomon court meant to incorporate in principle the standards enunciated in Terry
 
 
 [9]
 This analysis is slightly askew since Terry requires that an officer possess both reasonable suspicion that criminal activity is afoot and that the person with whom he is dealing may be armed and dangerous. Terry v. Ohio, 392 U.S. 1, 30, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889 (1968); 3 W. La Fave, Search and Seizure § 9.3, at 63-69 (1978). A reasonable suspicion of criminal activity alone is insufficient to justify a patdown search. See Powell v. Stone, 507 F.2d 93, 96 n.3 (1974), rev'd on other grounds, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976)
 
 
 [10]
 See Terry v. Ohio, 392 U.S. 1, 34-35, 88 S.Ct. 1868, 1886, 20 L.Ed.2d 889 (1968) (White, J. concurring) ("the person stopped is not obliged to answer, answers may not be compelled, and refusal to answer furnishes no basis for an arrest"); Michigan v. De Fillippo, 443 U.S. 31, 44-45, 99 S.Ct. 2627, 2635-2637, 61 L.Ed.2d 343 (1979) (Brennan, J., dissenting); United States ex rel. Newsome v. Malcolm, 492 F.2d 1166, 1172 (2d Cir. 1974) aff'd sub nom. Lefkowitz, Atty. Gen. of New York v. Newsome, 420 U.S. 283, 95 S.Ct. 886, 43 L.Ed.2d 196 (1975); People v. De Fillippo, 80 Mich.App. 197, 262 N.W.2d 921, 924 (1977), rev'd on other grounds, 443 U.S. 31, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979); People v. Berck, 32 N.Y.2d 567, 347 N.Y.S.2d 33, 300 N.E.2d 411, 414-15, cert. denied, 414 U.S. 1093, 94 S.Ct. 724, 38 L.Ed.2d 550 (1973); Keenan, supra note 7, at 298-301. But see State v. Ecker, 311 So.2d 104, 107-09 (Fla.), cert. denied, 423 U.S. 1019, 96 S.Ct. 455, 46 L.Ed.2d 391 (1975)
 
 
 [11]
 The vagrancy statute permitted a police officer to arrest an individual who, after inquiry by the officer, refused to identify himself, "under circumstances which justify suspicion that he may be engaged or about to engage in crime." 492 F.2d at 1171. The quoted language is very similar to the reference in Terry to the situation where an officer is led "to conclude in light of his experience that criminal activity may be afoot." Terry, 392 U.S. at 30, 88 S.Ct. at 1884. Just as the Solomon court saw no essential difference between the Terry standard and the standard in its statute, 33 Cal.App.3d at 435, 108 Cal.Rptr. 867, we see no essential difference between the Terry standard and the standard in the New York statute. Therefore, there is no essential difference between the New York statute and the California statute
 
 
 [12]
 See People v. De Fillippo, 80 Mich.App. 197, 262 N.W.2d 921, 923-24 (1977), rev'd on other grounds, 443 U.S. 31, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979); People v. Berck, 32 N.Y.2d 567, 347 N.Y.S.2d 33, 300 N.E.2d 411, 414-15, cert. denied, 414 U.S. 1093, 94 S.Ct. 724, 38 L.Ed.2d 550 (1973). See also Hall v. United States, 459 F.2d 831, 835-36 (D.C.Cir.1972) (en banc)
 
 
 [13]
 See also People v. De Fillippo, 80 Mich.App. 197, 262 N.W.2d 921, 924 (1977) (quoting Pinkerton v. Verberg, 78 Mich. 573, 44 N.W. 579, 582-83 (1889)), rev'd on other grounds, 443 U.S. 31, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979):
 Personal liberty, which is guaranteed to every citizen under our constitution and laws, consists of the right of locomotion, to go where one pleases, and when, and to do that which may lead to one's business or pleasure, only so far restrained as the rights of others may make it necessary for the welfare of all other citizens. One may travel along the public highways or in public places; and while conducting themselves in a decent and orderly manner, disturbing no other, and interfering with the rights of no other citizens, there, they will be protected under the law, not only their persons, but in their safe conduct. The constitution and the laws are framed for the public good, and the protection of all citizens from the highest to the lowest; and no one may be restrained of his liberty, unless he has transgressed some law. Any law which would place the keeping and safe conduct of another in the hands of even a conservator of the peace, unless for some breach of the peace committed in his presence, or upon suspicion of felony, would be most oppressive and unjust, and destroy all the rights which our Constitution guarantees.
 
 
 [14]
 See Michigan v. Summers, --- U.S. ----, ----, 101 S.Ct. 2587, 2592, 69 L.Ed.2d 340 (1981)
 
 
 [15]
 See Keenan, supra note 7, at 300. As the California District Attorneys Association explains in its amicus curiae brief in support of the appellants, section 647(e)'s identification requirement "allows (an officer) to obtain the identity of a person so that, should it develop that the person identified and released was involved in crime, he or she can be located."
 
 
 [16]
 See, e. g., People v. De Fillippo, 80 Mich.App. 197, 262 N.W.2d 921, 923 (1977), rev'd on other grounds, 443 U.S. 31, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979); People v. Berck, 32 N.Y.2d 567, 347 N.Y.S.2d 33, 300 N.E.2d 411, 414, cert. denied, 414 U.S. 1093, 94 S.Ct. 724, 38 L.Ed.2d 550 (1973); City of Portland v. White, 9 Or.App. 239, 495 P.2d 778, 779 (1972)
 
 
 [17]
 See Papachristou v. City of Jacksonville, 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110 (1972)
 
 
 [18]
 See also Newsome, 492 F.2d at 1173 (quoting People v. Williams, 55 Misc.2d 774, 286 N.Y.S.2d 575, 577 (Crim.Ct.1967))
 (T)hese defendants are 41 of a group of alleged prostitutes who have been arrested and detained 2500 times for disorderly conduct and loitering in New York City since August 18th .... This Court of its own knowledge is aware that except for a few isolated instances where defendants pleaded guilty, the disorderly conduct cases were dismissed. In many instances, "the girls" were arrested after 11:30 P.M., too late to be arraigned, night court had been adjourned, then kept overnight in a cell. In the morning they were brought to Court and released because the offenses for which they had been arrested could not be proven to have been committed by them.
 
 
 [19]
 Papachristou v. City of Jacksonville, 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110 (1972) (quoting United States v. Harriss, 347 U.S. 612, 617, 74 S.Ct. 808, 811, 98 L.Ed. 989 (1954))
 
 
 [20]
 See Kennan, supra note 7, at 301
 
 
 [21]
 People v. Berck, 32 N.Y.2d 567, 347 N.Y.S.2d 33, 300 N.E.2d 411, 413, cert. denied, 414 U.S. 1093, 94 S.Ct. 724, 38 L.Ed.2d 550 (1973)
 
 
 [22]
 See People v. De Fillippo, 80 Mich.App. 197, 262 N.W.2d 921, 924 (1977), rev'd on other grounds, 443 U.S. 31, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979); People v. Berck, 32 N.Y.2d 567, 347 N.Y.S.2d 33, 300 N.E.2d 411, 416, cert. denied, 414 U.S. 1093, 94 S.Ct. 724, 38 L.Ed.2d 550 (1973). But see State v. Ecker, 311 So.2d 104, 109-10 (Fla.), cert. denied, 423 U.S. 1019, 96 S.Ct. 455, 46 L.Ed.2d 391 (1975)
 
 
 [23]
 See, e. g., Brown v. Texas, 443 U.S. 47, 53 n.3, 99 S.Ct. 2637, 2641, 61 L.Ed.2d 357 (1979); Dunaway v. New York, 442 U.S. 200, 210 n.12, 99 S.Ct. 2248, 2255, 60 L.Ed.2d 824 (1979). But Cf. Adams v. Williams, 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972) ("brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer")
 
 
 [24]
 The district court apparently relied on the following Local Rules of Practice for the United States District Court for the Southern District of California:
 Rule 235-4(j) provides in part:
 (j) Preparation for Trial
 Unless otherwise ordered, the parties shall, not less than seven calendar days prior to the date on which the trial is scheduled to commence: ....
 (ii)(a)
 In jury cases, serve and file proposed voir dire questions, jury instructions, and forms of verdict which shall conform to Local Rule 245-3;
 Rule 245-3 provides in part:
 Unless otherwise ordered, each party shall serve and file proposed jury instructions in accordance with Local Rule 235-4(j). The judge may in his discretion, receive additional requests for instructions at any time prior to the commencement of argument to the jury.
 
 
 [25]
 Since we remand the case for a jury trial, we need not decide whether the district court abused its discretion in denying Lawson's request for a continuance on the day of trial, in order to either obtain counsel or prepare himself for trial